IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES LIMBAUGH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:93cv1404-A |
| | ) | (WO) |
| LESLIE THOMPSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| NATIVE AMERICAN PRISONERS OF ALABAMA - TURTLE WIND CLAN, et al., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:96cv554-A |
| | ) | (WO) |
| STATE OF ALABAMA DEPARTMENT OF CORRECTIONS, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

There is one remaining claim in this case which the court must resolve: the plaintiffs' challenge the Alabama Department of Corrections ("ADOC") policy prohibiting Native American inmates from participating in sweat lodge ceremonies. This lawsuit, which has been pending in this court for almost twelve years, is an paradigm of the extraordinary complexity confronted by Congress in determining and the judiciary in applying the appropriate standard of review for First Amendment free exercise of religion claims filed by

prisoners. Shortly before the filing of this case, Congress enacted the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq* ("RFRA"). While the parties in this case were engaged in settlement negotiations, the Supreme Court declared RFRA unconstitutional. *See City of Boerne v. Flores*, 521 U.S. 507 (1997). Guided by the traditional rational-basis test set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987), and the evidence presented during a three-day evidentiary hearing, this court concluded that the ADOC's policies did not impermissibly impinge on the plaintiffs' constitutional right to the free exercise of their Native American spirituality. The plaintiffs appealed this court's decision to the Eleventh Circuit Court of Appeals. (Doc. # 218.)

While the appeal was pending, Congress enacted the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, which protects prisoners from government-sponsored infringement on religious practices by resurrecting RFRA's substantial burden and strict scrutiny standards. The Act attempts to avoid RFRA's constitutional infirmities by anchoring Congressional authority for RLUIPA's enactment in both the Spending and Commerce Clauses. *See* 42 U.S.C. § 2000cc-1(b)(1)(2). Based on RLUIPA's potential applicability to this case, the Eleventh Circuit granted the plaintiffs' motion to remand "to permit the district court to determine . . . whether the new federal statute entitles plaintiffs to the relief that they seek." Shortly after the remand of this case, the United States intervened pursuant to 28 U.S.C. § 2403(a) to defend RLUIPA's constitutionality which the defendants challenged. (Doc. # 258.)

Then, on June 11, 2002, the defendants filed a motion for summary judgment on the

plaintiffs' only remaining claims that the ADOC policies restricting inmate hair length and prohibiting Native American inmates from sweat lodge ceremonies is a violation of RLUIPA. (Doc. # 281.) This court denied the defendants' motion with respect to the plaintiffs' claim that the ADOC policies prohibiting inmate participation in sweat lodge ceremonies is a violation of RLUIPA. (Docs. # 309, 317.) Specifically, the court determined that the analytical balancing test required by RLUIPA could not be performed because the evidentiary record prevented the court from evaluating the efficacy of any less restrictive alternatives to the traditional sweat lodge ceremony. (Doc. # 309 at 6, 27.) This court also reserved ruling on the constitutionality of RLUIPA. (*Id.*) The court granted the defendants' motion for summary judgment with respect to the ADOC's policy restricting inmate hair length. (*Id.*)

After the denial of the defendants' motion for summary judgment on the sweat lodge issue, the parties began working toward an amicable resolution of this issue, the last remaining issue in the case. On November 10, 2004, the ADOC revised its religious program services policy to include sweat lodge ceremonies to be held at designated correctional institutions during the Spring and Fall equinoxes and the Winter and Summer solstices. (Doc. # 372, Pl's Ex. 2.) Although the ADOC's religious services policy was substantially revised, the parties still were unable to reach a complete settlement of this case. This court conducted an evidentiary hearing on December 10, 2004, in which several plaintiffs testified regarding their concerns about the ADOC's implementation of the new policy. (Doc. # 372.) Based on the evidence and counsels' representations, the court concludes that, to the extent

3

the plaintiffs request injunctive and declaratory relief with respect to the absolute prohibition of sweat lodge ceremonies, their request should be denied as moot. The court also concludes that, to the extent the plaintiffs request damages for the ADOC's refusal to provide sweat lodge ceremonies after the enactment of RLUIPA, the defendants are immune.

## II.  DISCUSSION

### A.  The Successful Negotiations

This court's final decision regarding the absolute ban on sweat lodge ceremonies is in favor of the defendants. Nonetheless, the court finds that the plaintiffs are the true victors in this case. Prior to the filing of this lawsuit, the plaintiffs were prohibited from practicing their religion outdoors, they were deprived of ceremonial grounds and a medicine wheel, they were not allowed to participate in sweat lodge ceremonies or wear medicine bags with leather strings and other religious adornments and their religious items were frequently declared contraband and confiscated. After lengthy negotiations in this case, the defendants modified their policies to allow Native American inmates in the general prison population to celebrate the Harvest Moon Festival, Green Corn Ceremony, Winter and Summer solstices, and Spring and Fall equinoxes; participate in outdoor ceremonies; grow vegetation on ceremonial grounds; possess prayer books and bear claws; and wear medicine bags with leather strings and small feathers and beads. (Docs. # 97, 116, 177.) In addition, the defendants began permitting Native American inmates to use oak, cedar, and hickory, a talking stick and a

sacred pipe during designated ceremonies.[1]  (*Id.*)  For several years, the defendants have continued to allow Native American inmates in the general population to participate in these religious activities.  The defendants also recently agreed to allow sweat lodge ceremonies at certain institutions during the Winter and Summer solstices and Spring and Fall equinoxes.  The court therefore trusts that the defendants will continue to recognize and respect the plaintiffs' practice of Native American spirituality.

### B. The Constitutionality of RLUIPA

In their motion for summary judgment and supporting brief (Docs. # 281 & 282), the defendants contend that RLUIPA is unconstitutional because it exceeds Congress' enforcement power under section five of the Fourteenth Amendment and is not a valid exercise of Congressional power under the Commerce and Spending Clauses.  The Supreme Court has not yet specifically addressed whether RLUIPA is a violation of the Commerce and Spending Clauses.[2]  However, in *Benning v. Georgia*, the Eleventh Circuit held:

> Because Congress properly exercised its spending power by unambiguously conditioning the use of federal funds for state prisons on the related accommodation of the religious exercise of prisoners and that accommodation does not endorse a religious viewpoint, we conclude that . . . section [three] of RLUIPA was validly enacted under the Spending Clause and does not violate either the Establishment Clause or the Tenth

---

[1] The defendants also agreed to settle several claims concerning individual plaintiffs.  For example, the defendants agreed to expunge an inmate's prison record of a disciplinary he received at Kilby Correctional Facility.  (Doc. # 177 at p. 8.)

[2] The court recognizes that, in Cutter v. Wilkinson, ___ S.Ct. ___, 125 S.Ct. 2113 (2005), the Supreme Court recently held that section 3 of RLUIPA, on its face, qualifies as a permissible legislative accommodation of religion that is not inconsistent with the Establishment Clause of the First Amendment.

Amendment.

391 F.3d 1299, 1303 (11th Cir. 2004). *See also Midrash Shepardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) (holding that RLUIPA does not exceed Congress' power under § 5 of the Fourteenth Amendment).[3]  Consequently, the defendants' motion for summary judgment on this basis should be denied.

### C. The Absolute Prohibition on Sweat Lodge Ceremonies

In its June 12, 2001, order issued as a mandate, the Eleventh Circuit Court of Appeals directed this court to determine in the first instance whether RLUIPA entitles the plaintiffs to the relief that they seek.  (Doc. # 235.)  Therefore, at the time this case was remanded, the Court's directive required this court to consider whether the ADOC's absolute prohibition of sweat lodge ceremonies was a violation of RLUIPA and whether the plaintiffs were entitled to damages and declaratory and injunctive relief under the Act.

### (1) The Moot Claims

On November 10, 2004, the defendants changed their religious services policy to allow the plaintiffs and other Native American prisoners in the general prison population to participate in sweat lodge ceremonies during the Spring and Summer equinoxes and Winter and Fall solstices.  (Attach. to Doc. # 372, Pls' Ex. 2.)  Because the defendants have changed

---

[3] In addition, several other courts have held that RLUIPA falls within acceptable constitutional parameters.  *See Charles v. Verhagen*, 348 F.3d 601 (7th Cir. 2003) (spending and commerce clauses); *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (spending clause); *Williams v. Bitner*, 285 F.Supp.2d 593 (M.D. Pa. 2003) (spending clause); *Murphry v. Zoning Comm'n of the Town of New Milford*, 289 F.Supp.2d 87, 117-121 (D. Conn. 2003) (§ 5 of the Fourteenth Amendment); *Johnson v. Martin*, 223 F.Supp.2d 820 (W.D. Mich. 2002) (spending and commerce clauses); *Gerhardt v. Lazaroff*, 221 F.Supp.2d 827 (S.D. Ohio 2002) (spending and commerce clauses).

6

their policy regarding an absolute prohibition on sweat lodge ceremonies, the Eleventh Circuit's basis for issuing the mandate no longer exists. Consequently, the plaintiff's request for injunctive relief and declaratory relief is moot.

Furthermore, because the defendants are government officials, the court may confidently presume that the defendants will continue to allow the plaintiffs and other Native American inmates in the general population to participate in sweat lodge ceremonies. *See Troiano v. Supervisor of Elections in Palm Beach Co.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur."); *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-29 (11th Cir. 2004) ("Governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."). It is undisputed that sweat lodge ceremonies were conducted at Red Eagle Honor Farm, St. Clair County Correctional Facility, Fountain Correctional Facility, and Staton Correctional Facility in March 2005. (Doc. # 394.) As previously discussed, the defendants have broadened their view of Native American spirituality and have continued to follow the terms of prior settlement agreements in this case.[4] The court therefore trusts that the defendants will continue to allow sweat lodge ceremonies in the future.[5] Consequently, the plaintiffs' request for injunctive and declaratory

---

[4] In making this statement, the court does not mean to imply that there have not been or will not be implementation problems. The court does not doubt that the defendants' policies respecting Native American spirituality will continue to permit these religious practices.

[5] The court presumes that the ADOC will continue to permit sweat lodge ceremonies. However, the court also recognizes that there are certain circumstances in which an absolute or partial ban on sweat lodge

relief should be denied as moot.

    **(2)    The Request for Damages**

        **(a)    Qualified Immunity**

The defendants assert that, to the extent the plaintiffs request damages, they are shielded by the defense of qualified immunity.[6]  Government officials performing discretionary functions are entitled to qualified immunity from liability from civil damages unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

> [Q]ualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 553 U.S. [194,] 206 [(2001)].  For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. . . ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

---

ceremonies may be the least restrictive means of furthering a compelling interest in security.  *Cf. Cubero v. Burton*, 96 F.3d 1450, 1996 WL 508624, *2 (7th Cir. 1996) (Table) (the Court, applying RFRA, determined that the temporary closing of a sweat lodge to ensure that the building was structurally sound was a compelling governmental interest in safety and order which justified limitations on the plaintiff's freedom of religious conduct); *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996) (applying RFRA and finding that the outright prohibition against sweat lodge ceremonies was the least restrictive means of achieving compelling interests of prison safety and security in light of inmate's refusal to accept other less restrictive alternatives).

[6] During the December 10, 2004 evidentiary hearing, the defendants raised the defense of qualified immunity. (Doc. # 373.)  In their response to the plaintiffs' proposed order, the defendants also argued that they are shielded by qualified immunity. (Doc. # 387 at p. 6.)

*Hope*, 536 U.S. at 739. Therefore, the question is whether it was "sufficiently clear" to the individual defendants that an absolute prohibition on sweat lodge ceremonies was unlawful. *See Hope, supra.*

Under the circumstances of this case, the court has little difficulty concluding that the individual defendants are entitled to qualified immunity. At the time that the ADOC prohibited sweat lodge ceremonies, the contours of the plaintiffs' statutory rights under RLUIPA – a statute enacted during the pendency of this lawsuit – were anything but clear. *See Hale O Kaula Church v. Maui Planning Comm'n*, 229 F.Supp.2d 1056, 1067 (D. Hawaii 2002)(holding qualified immunity applied where RLUIPA was enacted during the pendency of a special use application). As previously discussed in this court's prior Recommendations, the defendants initially believed that the absolute prohibition on sweat lodge ceremonies was justified by the ADOC's compelling interests in security.[7]  (Doc. # 193, p. 8, n. 7; Doc. # 309, p. 22.) During the time the parties were in the process of negotiating other reasonable alternatives to an absolute ban, the law regarding the effect of RLUIPA on sweat lodge ceremonies was not clearly established.[8]  Therefore, in the absence of clearly established law

---

[7] As discussed in this court's March 14, 2003, Recommendation, the ADOC was specifically concerned about: (1) visibility problems caused by intense steam and heat inside the sweat lodge; (2) the inmates insistence that the ceremony be performed with an opaque covering; (3) the easy accessibility to hot rocks, shovels, and other ceremonial objects which could be used as weapons; and (4) the financial hardship caused by the need for additional monitoring of sweat lodge ceremonies. (Doc. # 309, p. 24.)

[8] The court is aware of only two cases which discuss the application of RLUIPA to sweat lodge ceremonies. *See Farrow v. Stanley*, [No. Civ. 02-567-B, Feb. 5, 2004] 2004 WL 224602, *10 (D.N.H. 2004) (concluding that plaintiff's request for interim injunctive relief be denied because further development regarding the costs and security risks in maintaining a sweat lodge were necessary); *Pounders v. Kempker*, 79 Fed.Appx. 941, 2003 WL 22462034 (8th Cir. 2003) (determining that the case should not have been dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) because fact issues remained concerning whether the prohibition on sweat lodge ceremonies serves a compelling interest and is the least restrictive means of

dictating a contrary decision, the court concludes that the individual defendants are entitled to qualified immunity.

### (b) Sovereign Immunity

The court also concludes that the individual defendants in their official capacities and the ADOC are immune from suit. An official-capacity suit is an alternative method of "pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *LaMarca v. Turner*, 995 F.2d 1526, 1542 (11th Cir. 1993). Thus, an official-capacity suit against individual defendants should be treated as a suit against the entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *LaMarca, supra*. Therefore, the plaintiffs' claims against the individual defendants in their official capacities are essentially claims against the ADOC, an agency of the State of Alabama.

This court recognizes that Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA. *Benning v. Georgia*, 391 F.3d 1299, 1305 (11th Cir. 2004). The Act specifically provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The statutory definition of "government" specifically includes states and state agencies. 42 U.S.C. § 2000cc-5(4)(A). A state's waiver of sovereign immunity from suit, however, does not necessarily waive its

---

advancing that interest). *Cf. Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996) (applying RFRA and noting that "[t]here may very well be less restrictive means of achieving prison safety and security than completely prohibiting sweat lodge ceremonies"). However, the circumstances in these prior cases are distinguishable from those in the present lawsuit.

immunity from monetary damages. A waiver of a state's Eleventh Amendment immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the [statutory] text as [will] leave no room for any other reasonable construction.'" *Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1522 (11th Cir. 1983) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). Therefore, absent an express waiver, the Eleventh Amendment bars a damages action against a State in federal court. *Hobbs v. Roberts*, 999 F.2d 1526, 1528 (11th Cir. 1993). The State of Alabama has not expressly waived its immunity to damages with respect to RLUIPA claims. Moreover, although it is clear that RLUIPA requires the State and its agencies to waive their sovereign immunity from suit, the reference to "appropriate relief" in section 2000cc-2(a) is not the kind of unambiguous waiver necessary to subject the ADOC and the individual defendants in their official capacities to liability for damages. *See James v. Price*, [No. 2:03cv209, March 2, 2005] 2005 WL 483443, *2 (N.D. Tex. 2005). *Cf. Tinsley v. Pittari*, 952 F.Supp. 384, 389 (N.D. Tex. 1996)(holding that RFRA's reference to "appropriate relief" did not waive sovereign immunity with respect to claims for monetary damages). Consequently, to the extent the plaintiffs seek monetary relief against the Alabama Department of Corrections and the individual defendants in their official capacities, the plaintiffs' claims are barred by the Eleventh Amendment and are subject to dismissal.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. To the extent the plaintiffs request injunctive and declaratory relief, the

plaintiffs' claim that the ADOC's absolute prohibition of sweat lodge ceremonies is a violation of RLUIPA be DISMISSED as moot.

2. To the extent the plaintiffs request damages, the plaintiffs' claim that the ADOC's absolute prohibition of sweat lodge ceremonies is a violation of RLUIPA be DISMISSED.

Additionally, it is

ORDERED that the parties shall file any objections to this Recommendation on or before **September 19, 2005**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

Done this 6th day of September, 2005.

                                         /s/Charles S. Coody
                                         CHARLES S. COODY
                                         CHIEF UNITED STATES MAGISTRATE JUDGE