IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICKY KNIGHT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:93cv1404-WHA |
| | ) | (WO) |
| LESLIE THOMPSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| NATIVE AMERICAN PRISONERS | ) | |
| OF ALABAMA - TURTLE WIND | ) | |
| CLAN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:96cv554-WHA |
| | ) | |
| STATE OF ALABAMA DEPARTMENT | ) | |
| OF CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

On March 18, 2012, plaintiff Irvin, a member of the plaintiff class, filed a supplemental motion for further relief, compliance and/or contempt (doc. # 552) in which he alleges that the defendants have unlawfully confiscated, retained and destroyed a number of his religious items.[1]  He also contends that he has been subjected to retaliatory transfers

_____

[1]  On October 22, 2012, the plaintiff filed a motion to enforce judgment (doc. # 516).  Action on this motion was held in abeyance pending resolution of the hair length issue which was before the court on remand from the Eleventh Circuit Court of Appeals.  During a telephone conference with the parties (continued...)

because he has sought to enforce the prior orders of this court securing to him certain rights to practice his Native American religion.  He seeks declaratory and monetary relief.

On June 12, 2000, the court entered a comprehensive order and judgment in this case adopting findings and conclusions set forth in a recommendation of this Magistrate Judge which incorporated the parties' stipulation filed March 5, 1998 as injunctive relief.  That stipulation resolved all issues in the case except claims about the use of a sweat lodge and restrictions on hair length.  As to the two latter issues, the court later found for the defendants, adopting another recommendation of this Magistrate Judge.[2]

On April 23 and 25, 2012, the court held an evidentiary hearing on Irvin's motion for contempt.  *See* Transc. of Evid. Hr'g, I & II (docs. ## 567 & 571) ("Tr.").  For the reasons which follow, the court concludes that the motion for further relief, compliance and/or contempt (doc. # 522) should be denied.

## DISCUSSION

"[C]ivil contempt proceeding[s are] brought to enforce a court order that requires [a party] to act in some defined manner."  *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998) *quoting Mercer v. Mitchell*, 908 F.2d 763, 768 (11th Cir. 1990) (alterations in original).  In this case, the plaintiff bears the initial burden of establishing by clear and

---

[1](...continued)
on March 19, 2012 concerning the pending supplemental motion for contempt, counsel for the plaintiff orally moved to withdraw the original October 2010 motion because the supplemental motion incorporates all issues raised in that motion.  The court granted that oral motion on March 19, 2012.  *See* Doc. # 553 at p. 2, ¶ 1.

[2]  On March 8, 2012, the court entered final judgment in this case.  (Doc. # 550)

convincing evidence that the order of this court was violated. *See Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th 1990). If the plaintiff makes "a prima facie showing that the . . . [court order] was violated, the burden of production shifts to the alleged contemnor to show a "present inability to comply that goes 'beyond a mere assertion of inability...'" *Id. See also Sec. & Exchange Comm v. Pension Fund of Am.*, 396 Fed. Appx. 577, 582 (11th Cir. 2010)

> We will make a finding of civil contempt - that is, willful disregard of the authority of this Court - only upon a showing that the alleged contempt is *clear and convincing*. *See McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000); *NLRB v. Crockett-Bradley, Inc.*, 598 F.2d 971, 975 (5th Cir. 1979). "This burden of proof is more exacting than the 'preponderance of the evidence' standard but, unlike criminal contempt, does not require proof beyond a reasonable doubt." *Jordan v. Wilson*, 851 F.2d 1290, 1292 (11th Cir. 1988) (per curiam). The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was *clear and unambiguous*; and (3) the alleged violator had the ability to comply with the order. *McGregor*, 206 F.3d at 1383 (emphasis added).

*Ga. Power Com. v. Nat'l Labor Relations Bd.*, 484 F.3d 1288, 1291 (11th Cir. 2007)

The court's order is "subject to reasonable interpretation," and the court "will construe any ambiguities or uncertainties in . . . a light favorable to the person charged with contempt." *Ga. Power Com.*, 484 F.3d at 1291.

The defendants argue that officials at the Alabama Department of Corrections did not intend to violate the court's order, but that avails them nothing because the court does not look to the "subjective beliefs or intent of the alleged contemners . . . but whether in fact their conduct complied with the order at issue." *Ga. Power Com.*, 484 F.3d at 1291 citing *Howard*

3

*Johnson*, 892 F.2d at 1516.

**A. History of confiscations.**  The plaintiff asserts that the defendants violated the order of this court by failing to comply with the requirements of the Stipulation filed by the parties on March 5, 1998 in the *Limbaugh v. Thompson*, Civil Action No. 2:93cv1404-ID, and *Native American Prisoners of Alabama v. State of Alabama Department of Corrections*, Civil Action No. 2:96cv554-WHA as set forth in the court's orders in those cases.  The plaintiff relies on the Recommendation of the Magistrate Judge entered on September 10, 1999, which recommended that injunctive relief to the inmates be granted "[b]ased on the stipulation which embodies the agreement of the parties on all issues . . . the evidence heard by the court and the record as a whole. . ." *Limbaugh v. Thompson*, Civil Action No. 2:93cv1404-ID, Doc. # 193 - *September 10, 1999 Recommendation of the Magistrate Judge* (adopted as Judgment of the court by final order of June 12, 2000, Doc. # 214).  The injunctive relief granted by the court included, but was not limited to, authorizing Native American religion inmates to possess medicine bags, feathers, storage space, maintenance and use of ceremonial grounds and permission to celebrate particular ceremonial days.  Irvin complains of several instances in which his sacred religious items were confiscated and/or destroyed.

Plaintiff Irvin is a named plaintiff in this litigation.  In February 2001, Irvin was transferred to Limestone Correctional Facility.  In January 2002, Irvin was transferred to West Jefferson Correctional Facility.  In December 2004, Irvin was transferred to Kilby

Correctional Facility.  On January 20, 2005, Irvin was transferred to St. Clair Correctional Facility.  During these transfers, he was permitted to keep all religious items in his possession.

On October 23, 2008, Irvin was transferred back to Limestone Correctional Facility at his request to be closer to his family.  It was the confiscation of items during his intake that forms the first basis for his motion for contempt.  During Irvin's intake, Chaplain Baggett confiscated feathers, a personal prayer pipe, spiritual writings and literature, a communal prayer pipe, small rocks, beads, and antlers used for adorning religious items, a prayer shirt, sacred herbs, multiple necklaces, and multiple rings.[3]  Shortly thereafter, Irvin was transferred to Fountain Correctional Facility.

On December 2, 2010, while housed at the Fountain Correctional Facility, the following items were confiscated: a personal medicine wheel, a dream catcher, a small leather pouch with stones, a small ceremonial drum, an extra medicine bag, a prayer shirt, a prayer rug and a handkerchief.  These items were not returned to Irvin.  Eventually, the items were destroyed when the property room was cleaned out in September 2011.

In August 2011, during a shake down of the prison dormitory, Irvin's sacred pipe bowl was shattered.  According to Irvin, his religious items were desecrated by non-visual inspection by prison guards.

On March 9, 2012, Irvin was transferred to Bibb Correctional Facility where all his

---

[3]  Many of these items were returned to Irvin on October 21, 2010, the day before the motion for contempt was filed.  *See* Doc. # 516.

religious items except his medicine bag were confiscated, ostensibly because the Chaplain was on vacation and there was no one else to review his items.  His religious items have been returned, and this confiscation is not the subject of this contempt proceeding.

**B.  Specific violations of the Court's Order**.  The court will address seriatim each area of the court's order[4] that the plaintiff alleges the defendants have violated.

**1.  Paragraph 19**.  According to Irvin, the defendants violated paragraph 19 of the court's order by confiscating religious items that he had in his possession prior to his transfer to Limestone, Fountain and Bibb correctional facilities.  Paragraph 19 of the court's order states, in pertinent part, that "[t]he DOC shall permit inmates to keep and retain their religious items in the event they are transferred from one facility to another."  (Doc. # 193, Recommendation of the Magistrate Judge at p. 11, ¶ 19).  Irvin claims that by confiscating his religious items upon his arrival at Limestone, Fountain and Bibb, the defendants are in violation of the court's order and therefore in contempt.

The plaintiff reads paragraph 19 too broadly.  While this provision allows an inmate who is transferred from one institution to another to take with him religious items, paragraph 19 does not require the Alabama Department of Corrections to allow the inmate to keep items that violate the court's order or DOC policy.  Historically, when inmates were transferred

---

[4]  The defendants repeatedly referred to Administrative Regulation 333 which describes the "responsibilities, policies, and procedures for recognition of religious beliefs and practices of committed offenders."  (Contempt Hr'g, Def. Ex. 1).  The regulation is admittedly much more detailed than the court's order.  However, that regulation does not trump the court's order and in the matter of contempt, the court looks to the order, not the regulation.

between correctional facilities, religious items were left at the institution the inmate was leaving.[5]   Paragraph 19 was drafted to eliminate the problem of inmates having to abandon their religious items at an institution they were leaving.

More importantly, paragraph 19 cannot be read in isolation and does not otherwise expand the limits of the court's order.   Paragraph 22 specifically states that "[t]he religious and ceremonial items which were *previously possessed* by the plaintiffs **and do not violate the provision set forth herein or DOC policy shall be returned**."   (Doc. # 193, Recommendation of the Magistrate Judge at p. 11, ¶ 22) (emphasis added).   The mere fact that one institution might be more liberal than another institution in allowing an inmate to possess religious items does not then raise the bar for other institutions and does not imply that the defendants are in contempt for strictly adhering to the court's order and prison regulations.   Moreover, paragraph 22 implies that religious items may be seized because it provides that items not in violation of the DOC policy shall be returned.   Absent this interpretation, paragraph 22 makes no sense.   Consequently, the court concludes that the plaintiff has failed to demonstrate by clear and convincing evidence that the defendants violated paragraph 19 of the court's order by confiscating items he previously possessed at other institutions when possession of those items is not required by the court's order.

2.   **Sacred items box**.   In the motion for contempt, the plaintiff alleges that the defendants violated Paragraph 21 of the court's order which requires the Alabama

---

[5]   The court has institutional knowledge of this case as he has been the assigned Magistrate Judge since the inception of this case.   *See Docket Entry # 9*, Dec. 9, 1993.

Department of Corrections to permit Native American inmates to possess a "sacred items box in their personal possession." (Doc. # 193, Recommendation of the Magistrate Judge at p. 11, ¶ 21). During the contempt hearing, the plaintiff presented no evidence regarding this alleged violation. Consequently, the court concludes that the plaintiff has failed to demonstrate by clear and convincing evidence that the defendants violated paragraph 21 of the court's order.

**3. Talking Stick**. Plaintiff Irvin alleges that the Alabama Department of Corrections violated paragraph 24 of the court's order by confiscating his talking stick. Paragraph 24 requires the Alabama Department of Corrections to "permit plaintiffs to maintain and store a talking stick no larger than two feet long and one inch in diameter on the ceremonial grounds of each prison." (Doc. # 193, Recommendation of the Magistrate Judge at p. 12, ¶ 24). The plaintiff argues that because he was previously permitted to retain a personal talking stick, the Alabama Department of Corrections could not confiscate his personal talking stick when he was transferred to a new institution. *See* Tr. II-35. The Alabama Department of Corrections does not dispute that Irvin is permitted a talking stick but argues that he is permitted one talking stick that must be stored on the ceremonial grounds and that Irvin already had one talking stick when the second talking stick was confiscated.

Resolving any ambiguities or uncertainties in favor of the Alabama Department of Corrections , *see Ga. Power Com*., 484 F.3d at 1291, as the court is required to do, the court concludes that the defendants' interpretation of the court's order limiting an individual to a

single talking stick is reasonable. The order permits the plaintiffs "to maintain and store **a** talking stick." (emphasis added). The plaintiff has failed to demonstrate by clear and convincing evidence that the defendants violated paragraph 24 of the court's order by confiscating his talking stick and not permitting him to possess more than one talking stick.

**4. Spiritual Literature**. It is undisputed that the plaintiff's spiritual literature was confiscated. The language of the court's order is clear – "[t]he DOC shall impose *no* proscriptions on the cultural and spiritual literature allowed to the Native American inmates. . . ." (Doc. # 193, Recommendation of the Magistrate Judge at p. 10, ¶ 16). When faced with the contempt proceedings, the defendants purged themselves of any contempt by returning to Irvin his spiritual literature. It is undisputed that the religious material has been returned and has not been confiscated again. Thus, to the extent that the defendants violated the court's order, by the affirmative action of returning Irvin's spiritual literature, the contempt has been purged. *See Newman v. Graddick*, 740 F.2d 1513, 1524 (11th Cir. 1984) ("Since contempt is a conditional sanction, the person in civil contempt must be given the opportunity to bring himself into compliance.")

**5. Beads, small stones, crystals.** The plaintiff contends that the defendants improperly confiscated beads, small stones and crystals.[6] However, the defendants assert that because the items seized were maintained in plastic bags, and not in Irvin's medicine bag, the items were properly classified as hobby craft materials. Paragraph 2 of the order permits

---

[6] To the extent that Irvin had sacred crystals and rocks, the defendants agreed that Irvin could have those crystals and rocks that fit inside his medicine bag.

inmates to "maintain inside their medicine bag all objects which have a religious significance to the wearer, including, but not limited to, small stones, sand or dirt, feathers, beads, except to the extent that such items are otherwise prohibited herein (i.e. claws, arrowheads or antlers that exceed the size restrictions set forth herein)."  (Doc. # 193, Recommendation of the Magistrate Judge at p. 4-5, ¶ 2).

At the contempt hearing, the evidence demonstrated that when confronted about these items, Irvin stated that "he made things for other inmates."  It is undisputed that the items confiscated were not in Irvin's medicine bag, but were stored in separate plastic bags.[7] Because the items were not stored in Irvin's medicine bag, and were used to create religious items for other inmates, it was reasonable for the Alabama Department of Corrections to consider the beads, stones and crystals as hobby craft items.  Consequently, their confiscation was not inconsistent with the order and was not a contempt.

**6. Rings and necklace**.  Irvin complains that his necklace was confiscated and that he was permitted to keep only one or two rings when he had previously been allowed to have multiple rings[8] and the necklace at other institutions.  Paragraph 14 of the court's order addresses "colored ceremonial items, such as arm bands, chokers, and headbands for use in religious practice."  (Doc. # 193, Recommendation of the Magistrate Judge at p. 9, ¶ 14).

---

[7] Irvin admitted that the items were stored in plastic bags but asserted that they all fit in his holy box.  Of course, the items must fit in his holy box but the items must also be authorized by the court's order and prison regulations.

[8] Irvin testified that he was previously allowed to keep nine (9) rings.

The defendants contend that the rings have no religious significance, are not covered by the court's order, and are banned by the prison's jewelry policy.  First, while paragraph 14 contemplates the use and possession of ceremonial items, it requires that those items be worn or displayed only on the ceremonial grounds and requires that the items be stored on the ceremonial grounds.[9]  (*Id.*)  Next, the undisputed evidence demonstrated that Irvin was permitted to have a choker in accordance with the court's order.

During the contempt hearing, the defendants defended the confiscation of these items as violative of the jewelry policy.  The plaintiff presented no evidence in response. Consequently, the court concludes that the plaintiff has failed to demonstrate by clear and convincing evidence that the defendants violated the court's order by confiscating his rings and necklace.

**7.  Dream Catcher**.  Irvin complains that Alabama Department of Corrections officials at Fountain Correctional Facility improperly confiscated his dream catcher during the shake down of his dormitory in December 2010.  First, the court's order does not mention dream catchers.  Consequently, the defendants cannot be in contempt.

---

[9]  To the extent that Irvin contends it is a violation of the court's order to prohibit him from personally possessing these items, he is simply wrong.  Paragraph 14 states in full:

> The DOC shall permit inmates to possess colored ceremonial items, such as arm bands, chokers, and headbands for use in religious practice.  The DOC shall require that such items may not be worn, shown or displayed anywhere other than the ceremonial grounds or in the area specifically provided for Native American activities, and then only for the purposes of practicing Native American spirituality.  The DOC shall require such items to be kept on the ceremonial grounds.

(Doc. # 193, Recommendation of the Magistrate Judge at p. 9, ¶ 14).

However, Administrative Regulation 333 does allow inmates to possess a "Native American Dream Catcher." (Defs' Ex. 1 at 9, ¶ 13).

    a.    The Religious Activity Review Committee has approved this item, and has agreed that it can be hung from the inmate's bed during the hours he is asleep.

    b.    It should be maintained with the inmate's personal property at all other times.

(*Id.*)

The regulation permits inmates to possess a single dream catcher, and it is undisputed that the dream catcher confiscated by the Alabama Department of Corrections defendants was an additional dream catcher.

**8. Small leather pouch with stones**. Irvin next complains that Alabama Department of Corrections officials at Fountain Correctional Facility improperly confiscated a "small leather pouch with stones."[10] It is undisputed that pouch was confiscated by the Alabama Department of Corrections defendants because it was not authorized under the court's order. While the court's order permits Irvin to possess a personal medicine bag, it does not permit multiple medicine bags and Irvin does not assert that this pouch was a medicine bag. Because the confiscated pouch was not authorized under the court's order, its confiscation was not inconsistent with the order

**9. Personal Drum**. Irvin testified that officials at Fountain Correctional Facility also confiscated his small personal drum. The court's order "permit[s] Native American inmates

---

[10] Irvin does not argue that this pouch was a medicine bag.

to have drums and rattles to be used during ceremonies held on the ceremonial grounds."
(Doc. # 193, Recommendation of the Magistrate Judge at p. 9, ¶ 13).  The order is specific
that these items must be maintained or kept on the ceremonial grounds or by the chaplain.
(*Id.*)  There is no provision for an inmate to have in his possessions or in his holy box, a
personal drum.  Confiscation of this item was not in violation of the court's order.

10.  **Medicine Bag**.  Irvin complains that the Alabama Department of Corrections
officials at Limestone Correctional Facility improperly confiscated his medicine bag.  The
Court's order permits Native American inmates "a personal medicine bag."  (Doc. # 193,
Recommendation of the Magistrate Judge at p. 3, ¶ 1).[11]  It is undisputed that the medicine
bag confiscated by the defendants was an extra medicine bag.  Because the confiscated
medicine bag was an additional medicine bag and Irvin was allowed to keep a single
medicine bag, the confiscation of the extra medicine bag was not inconsistent with the order.

11.  **Medicine Wheel**.  Irvin challenges the confiscation of his personal medicine
wheel at Fountain Correctional Facility.  While the order allows for a medicine wheel, the
order contemplates a communal medicine wheel, not a personal wheel.  The Order specifies
that "Native American inmates shall be allowed to maintain a medicine wheel, comprised of
stones, upon the ceremonial grounds."  (Doc. # 193, Recommendation of the Magistrate
Judge at p. 7, ¶ 7).  Nothing in the order authorizes Irvin to possess a personal medicine

---

[11]  Paragraph 1 states in relevant part that "Native American inmates shall be allowed to have a
personal medicine bag to be kept on their person or in their personal property . . ."  (Doc. # 193,
Recommendation of the Magistrate Judge at p. 3, ¶ 1).

wheel in his personal possessions or his holy box.  Thus, the confiscation of his personal medicine wheel was not a violation of the court's order.

**12. Feathers**.  Irvin contends that the officials at Limestone Correctional Facility improperly confiscated many of his feathers.  Undisputedly, the court order permits inmates multiple feathers.  Chaplain Baggett testified that he went through Irvin's items and determined what was approved pursuant to Administrative Regulation 333.  According to Chaplain Baggett, Irvin had "a lot of feathers," and as Chaplain, he normally did not approve that many feathers.  The problem with Chaplain Baggett's position is the court order did not prohibit Irvin from having the feathers, and his unilateral decision to prohibit him from having them is a violation of the order.

> The defendants shall not prohibit Native American inmates from possessing feathers for religious and ceremonial use.  Feathers must be kept in the personal property box in their cell or dormitory, and the DOC shall not prohibit the use of feathers on the ceremonial grounds or in the areas used for North American activities at each facility.  Inmates shall be allowed to keep and maintain with their personal possessions prayer fans for use on the ceremonial grounds.

(Doc. # 193, Recommendation of the Magistrate Judge at p. 7-8, ¶ 9).

However, prior to the institution of these contempt proceedings, the defendants returned to Irvin his feathers.  Consequently, the court concludes that the defendants have purged themselves of any contempt.  *See Newman*, *supra.*

**13. Prayer Pipes**.  Irvin initially complained that when he transferred to Limestone Correctional Facility, he had in his possession a personal prayer pipe and a ceremonial prayer

pipe and a spare replacement bowl.  After consulting with the Warden, Chaplain Baggett informed Irvin that he could keep the pipe with a sharp point on it if he modified the pipe to remove the sharp end.  Irvin declined to  "murder" his pipe and instead gave it to his sister to keep.  Irvin was permitted to keep one personal prayer pipe.   Irvin was permitted to keep a second prayer pipe for use as the congregant prayer pipe.

The court order permits Irvin to "keep and maintain a personal prayer pipe in addition to a prayer pipe for use by the group to be kept by the pipe keeper." (Doc. # 193, Recommendation of the Magistrate Judge at p. 8, ¶ 11).  Moreover, inmates are permitted, "according to each inmate's personal preference, to keep the pipes with the personal possessions of the inmate, at the ceremonial grounds, in the area specifically provided for Native American activities, or with the chaplain." (*Id*.)

Because the confiscated prayer pipe was an additional pipe and Irvin was allowed to keep a personal prayer pipe and a congregant prayer pipe, the confiscation of the extra pipe was not inconsistent with the order.

**14.  Herbs**.  According to Irvin, Alabama Department of Corrections officials improperly confiscated sacred herbs from his holy box.  The Court's order specifically requires that "[a]ll herbs, except tobacco, are to be maintained and kept by the chaplain or in the Shift Commander's office." (Doc. # 193, Recommendation of the Magistrate Judge at p. 8-9, ¶ 12).  Thus, it was not a violation of the order to seize Irvin's herbs which were in his personal possession.

**15.  Prayer Shirt and Prayer Rug**.  The plaintiff alleges that his prayer shirt and prayer rug were improperly confiscated by prison officers.  The defendants respond that these two items are only permitted on ceremonial grounds because they have colored designs. Paragraph 14 of the Court's Order permits "inmates to posses colored ceremonial items," but prohibits these items from being "worn, shown or displayed anywhere other than the ceremonial grounds or in the area specifically provided for Native American activities."  The Court Order also requires that colored items "be kept on the ceremonial grounds."  (Doc. # 193, Recommendation of the Magistrate Judge at p. 9, ¶ 14).  Nothing in the order authorizes Irvin to have these items in his personal possessions or his holy box.  Thus, the confiscation of the prayer shirt and prayer rug was not a violations of the court's order.

**16.  Destruction of sacred pipe bowl**.  Finally, Irvin complains that in August 2011, officials at Fountain Correctional Facility destroyed his sacred pipe bowl by unlawfully searching his holy box.  It is undisputed that in August 2011, during an inspection of the dormitory, correctional officer James Earl Walker conducted a "shake down" of Irvin's bed. Irvin admits that his sacred pipe was hanging from the end of his bed even though the pipe was supposed to be stored in his holy box.  Walker denied touching the pipe bowl and  Irvin concedes that he did not witness the destruction of the pipe bowl.  Furthermore, the evidence demonstrates that a cleaning crew was working in the dormitory at the same time as the inspection.  Consequently, the court concludes that Irvin has failed to demonstrate by clear and convincing evidence that the defendants violated the court's order by engaging in a non-

visual inspection of his sacred pipe bowl that resulted in its destruction.

   **B.   Destruction of confiscated items**.   Irvin contends that items improperly confiscated in December 2010 at Fountain Correctional Facility were then willfully destroyed in September 2011.   During a shakedown of the dormitory on December 2, 2010, the following items were found in Irvin's possession and confiscated: personal medicine wheel, dream catcher, stone pouch, personal drum, extra medicine bag, prayer shirt and prayer rug. (Defs' Ex. 24).   The unauthorized items were seized and placed in the property room.   (Defs' Ex. 18).   Irvin attempted to secure the return of these items, and his attorney attempted to secure the return to the items.

   In September 2011, correctional officer Givens[12] was assigned to clean out the property room at Fountain Correctional Facility.   (Tr. I- at 89).   When Givens cleaned out the property room, Irvin's Native American religious items were removed and destroyed.   (*Id*. at I-90-92).   However, Givens did not see any Native American religious items when she cleaned out the property room, nor did she know that Irvin's Native American religious items were stored in the property room.   (*Id*.)   Finally, Givens testified that if she had noticed Native American religious items, she "would not have removed the items from the property room for disposal.   [She] would have spoken with Warden White prior to removing those items, because [she knew] they were Native American items."   (*Id*. at I-93.)

---

   [12]   At the time she cleaned out the property room, Givens was a correctional officer lieutenant. (Tr.-I at 89).   When she testified at the evidentiary hearing on the motion for contempt, she was the Warden of Holman Correctional Facility.   (*Id*. at 88-89).

The evidence clearly demonstrated that the destruction of the properly seized items was at best inadvertent and at worst negligent.  While it is clear that the confiscated items should not have been destroyed, their destruction alone does not rise to the level of contempt because the items were properly seized.

**C.  Retaliatory Transfer claim**.  Irvin was transferred to Limestone Correctional Facility in October 2008 at his request to be closer to his family.  However, in December 2008, Irvin was transferred to Fountain Correctional Facility, an institution furthest from his family.  Irvin alleges that he was transferred in retaliation for attempting to secure the return of his Native American religious items and to challenge the confiscation of those items as contrary to the court's order.  The plaintiff's reliance on the court's order is misplaced because he has failed to state a claim upon which relief can be granted.   In this contempt proceeding the court looks only to whether the challenged conduct complies with the court's order; the court's inquiry is limited to this question.  *Ga. Power Com*., 484 F.3d at 1291.  A retaliatory transfer claim is more properly raised an independent claim; it is not a claim that can be pursued through the contempt proceeding.[13]

**D.  Final Note**.  Throughout the proceedings concerning the contempt motion, the court has observed that one source of legitimate frustration for the plaintiffs undoubtedly is the somewhat inconsistent application at different prisons of the regulations which govern

---

[13]  A review of this court's electronic filing system demonstrates that Irvin has not pursued an action for retaliatory transfer. More importantly, however, there was no evidence that Irvin was transferred in retaliation for complaining about the seizure of his religious items and any suggestion that he was is based on pure speculation.

Native American Religion practices by inmates. Some prisons are strict; some prisons are lenient. While the court's order certainly does not prohibit leniency, that order does not enshrine leniency as the standard either. It is the terms of the court's order which enforces the parties' stipulation which sets the minimum standards concerning Native American Religion practices by inmates. Both parties must recognize that fact.

The Supreme Court has long recognized that administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). And the Court has also recognized that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Turner v. Safely,* 482 U.S. 78, 84 (1987) (quoting *Procunier v. Martinez,* 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989)). Prison administration "is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Id.* at 84–85. For these reasons, this court welcomed the parties' negotiated resolution of this case by way of their stipulation filed March 5, 1998, the terms of which were incorporated in the court's order entered June 12, 2000.

The evidence in this case demonstrates that while prison officials generally have been faithful to implementation of the order's requirements, it is likely that the passage of time has diluted their recognition of the need to adhere to the court's order. As earlier indicated, the court's order is embodied in Alabama Department of Corrections Administrative Regulation

333.  But that regulation does not deal solely with Native American Religion but sets out by its terms "responsibilities, policies, and procedures for recognition of [all] religious beliefs and practices of committed offenders."   While the regulation alludes to some of its requirements being based on orders of a court, nothing in the regulation highlights the consequences of failure to abide by a court's order.

Undoubtedly, prison administrators have some degree of discretion in the manner in which administrative regulations are implemented.  But the very existence of that discretion could further reduce the administrators' realization that they and their correctional officers must comply with the orders of this court regarding inmates who practice Native American Religion.  The court hopes that the Commissioner of the Alabama Department of Corrections will revitalize that realization through regular training of administrators and officers.

## CONCLUSION

Based on the record before it, the court cannot conclude that Irvin has established by clear and convincing evidence that the actions of administrators and correctional officers of the Alabama Department of Corrections constituted contempt of the court's order.  Accordingly, it is the RECOMMENDATION of the MAGISTRATE JUDGE that the plaintiff's supplemental motion for further relief, compliance and/or contempt (doc. # 552) be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **March 19, 2014.**  Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 5th day of March, 2014.

                              _____/s/Charles S. Coody_____
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE